CHALFIE & TELLER *v.* MONUMENTAL LIFE INSURANCE
COMPANY ET AL.

(No. A-720438—Decided January 24, 1973.)

Common Pleas Court of Hamilton County.

*Messrs. Chalfie & Teller* and *Mr. Jerome S. Teller,* for
plaintiffs.
*Messrs. Shaffer & Williams, Mr. William B. Shaffer,
Jr.,* and *Mr. Henry C. Kasson,* for defendant, Monumental
Life Insurance Co.
*Mr. Richard D. Haney,* for third-party defendant, Kentucky Mortgage Company of Ohio.

BLACK, J. This is an action for fees for legal services
performed by Chalfie & Teller of Cincinnati, Ohio (attorneys), brought against Monumental Life Insurance Company of Baltimore, Maryland (lender), in connection with
a certain proposal for the development of real estate for
commercial purposes. The lender joined as third-party
defendant, Kentucky Mortgage Company of Ohio, located
in Cincinnati (mortgage broker), claiming that if there
is any liability to the attorneys, the mortgage broker is
obligated to pay that obligation by reason of a certain

agreement between lender and mortgage broker. The matter is before this court for trial *de novo* by reason of an appeal from an award made by a board of arbitration pursuant to the Rules for Compulsory Arbitration adopted by the Court of Common Pleas of this county.

All parties being in agreement about the value of the services and the amount of costs advanced by the attorneys, the sole issue before the court is whether or not there is a contractual obligation to pay the attorneys which is binding on either the lender or the mortgage broker, or both.

The evidence discloses that the lender had certain "standard" terms with respect to its requirements for any borrower before it would place a mortgage loan. These standard terms required that the cost of meeting all of these requirements, including title insurance policy, survey, appraisals, attorneys' fees, and all other expenses, would be paid by the borrower. The lender has the economic power to make the borrower pay the costs of producing these assurances.

In this case, the mortgage broker obtained from M & T Enterprises, Inc., of Cincinnati (borrower) an exclusive agency agreement to "place" the mortgage loan needed to finance the borrower's apartment building project. This agency agreement contained the lender's "standard" terms. It was never delivered to the attorneys nor is there any evidence that the attorneys ever saw or examined it.

The attorneys were approached by the mortgage broker, who brought with him the principal officers of the borrower to discuss the financing of the project, being the second transaction in which the parties had participated, the earlier one having been a mortgage loan from lender to an entirely separate legal entity controlled by the same principals. That earlier transaction was completed when the lender advanced to that earlier borrower $190,000, secured by first mortgage on an existing building. All of the costs of meeting lender's requirements, including the payment of attorneys' fees, were paid at the closing from the proceeds of the mortgage loan.

The current transaction was a proposal for a mort-

gage loan of $356,000 on an apartment project which was to be constructed at 4800 Hamilton Avenue in Cincinnati. The borrower was required to deposit with the lender an amount equal to 2% of that sum as a "stand-by fee." Being familiar with the requirements of the lender from the first transaction, the attorneys proceeded to produce or cause to be produced those documents and other assurances needed in order to meet the lender's requirements, including, in this instance, a special clause which would give the lender a participating interest in the project itself upon completion of the mortgage loan. That participation clause was drafted by the attorneys and submitted directly to the lender for its approval, which was given. It is unnecessary to review all of the work performed by the attorneys. It is sufficient to state that the lender was aware throughout the period of negotiations that the attorneys were performing services beneficial to the lender in the sense that these services produced or sought to produce the documents and assurances required by the lender, and also, that the lender had direct knowledge that the attorneys expected to be paid for their services. The borrower had its own lawyers acting in its behalf; in fact, the borrower engaged special counsel in addition to its general counsel, in order to clear up the problems described below. While the mortgage broker acted as the lender's agent in this transaction, the lender had no lawyer representing its interests other than the attorneys who are plaintiffs in this action.

There is no evidence of any direct, express agreement by the lender, or by the mortgage broker, requiring the lender to pay for the legal services rendered by the attorneys.

The transaction failed and was never completed. Pursuant to the terms of the lender's "commitment," the 2% stand-by fee deposited by the borrower was forfeited to the lender. Before that result was determined, extended negotiations over a period of months disclosed, first, that there were a number of defects in the title to the real estate which had to be cleared up, and, second, that the financial condition of the borrower was not sufficiently strong to insure

that the borrower would be able to maintain and operate the completed project at a profit and without default. In fact, the attorneys refused to close the transaction because in their opinion, there was no reasonably adequate assurance that the borrower could make the project a financial success. The attorneys believed their refusal to be in the best interest of the lender, despite the fact that from a strictly legal point of view the attorneys could have certified the project as meeting the requirements of Ohio law. If the deal had been closed, the attorneys would have been paid $2,500 for their services. After the project had failed, the attorneys rendered their bill for professional services in the amount of $1,700 and costs advanced in the amount of $107.30.

The law is quite clear that in the absence of an express contract, "there may be a recovery on *quantum meruit* if it is shown that services were rendered with the knowledge and approval of the defendant. The law implies an agreement or promise on the part of the person thus benefited to pay a fair and reasonable compensation for the services." 6 O. Jur. 2d, Attorneys at Law, Section 120. A leading Ohio case is *Columbus, Hocking Valley & Toledo Ry. Co.,* v. *Gaffney* (1901), 65 Ohio St. 104, 116, in which the court quotes from Abbott's Trial Evidence, 358, as follows:

" 'In general there must be evidence that defendant requested plaintiff to render the service or assented to receiving their benefit under circumstances negativing any presumption that they would be gratuitous. The evidence usually consists in, first, an express request pertaining to the services, or second, circumstances justifying the inference that plaintiff, in rendering the services expected to be paid, and defendants supposed or had reason to suppose and ought to have supposed that he was expecting pay, and still allowed him to go on in the service without doing anything to disabuse him of this expectation; or third, proof of benefit received, not on an agreement that it was gratuitous and followed by an express promise to pay.' "

There is an extensive review of the law on implied

promise to pay reasonable value of attorney's services at 78 A. L. R. 2d 318.

In essence, the evidence shows that the attorneys performed their services at the express request of the mortgage broker as correspondent or agent for the lender, that the lender knew that the attorneys were at work on this project, that the attorneys expected to be paid for their services and that the lender knew the attorneys had this expectation and allowed the attorneys to go on with their services in the face of impending failure.

The fact that the lender would have required the borrower to pay all expenses incurred in the transaction including the bill of the attorneys does not change the result in this case. The fact of the matter is that the attorneys were working for and on behalf of the lender and were expected by the lender and the mortgage broker to resolve all conflicts in favor of the lender.

The mortgage broker did not expressly contract with the attorneys for their legal services either for itself or for the lender. Nor is the mortgage broker obligated on the implied contract for the services. The mortgage broker was an agent, and in this instance, a conduit of information between the lender, the attorneys and the borrower. The legal services were rendered not for the benefit of the mortgage broker, but for the sole benefit of the lender.

There is no evidence that the mortgage broker guaranteed the lender against the costs incurred in the negotiations if they were to fail. The custom of the industry does not clearly imply any such guarantee.

A judgment entry shall be drawn in favor of the plaintiffs for the sum of $1,807.30, with interest from July 6, 1971, and costs, against defendant, Monumental Life Insurance Company, and for the dismissal of third-party defendant, Kentucky Mortgage Company of Ohio, without costs.